MAXWELL v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant.*

1. **Master and Servant**: INCOMPETENCY OF LATTER: DRUNKENNESS. Where an employe is injured by the negligent act of another servant resulting from the latter's intoxication, and the employer knew of his intemperate habits and the plaintiff did not, the employer is liable for the injury.

2. ———: ———. It is immaterial to a recovery in such case whether

| | |
|---|---|
| 85 | 95 |
| 100 | 354 |
| 38a | 659 |
| 85 | 95 |
| 101 | 683 |
| 85 | 95 |
| 46a | 393 |
| 85 | 95 |
| 53a | 415 |
| 85 | 95 |
| 115 | 183 |
| 85 | 95 |
| 123 | 173 |
| 85 | 95 |
| 140 | 669 |
| 85 | 95 |
| 144 | 618 |
| 85 | 95 |
| 86a | 624 |
| 85 | 95 |
| 92a | 4507 |
| 85 | 95 |
| 175 | 4625 |

the servant causing the injury was a fellow-servant of the one injured or his superior.

3.  **Instructions.** Instructions are properly refused which assume the truth of material facts, or ignore material facts, or assert inapplicable abstract propositions of law.

4.  **Practice :** OBJECTIONS TO EVIDENCE. Objections to the introduction of evidence should be made at the time it is offered and not be raised by instructions to the jury.

5.  **New Trial :** NEWLY DISCOVERED EVIDENCE. A party is not entitled to a new trial on the ground of newly discovered evidence when such evidence was accessible to him before the trial.

*Appeal from Livingston Circuit Court.*—HON. JAS. M. DAVIS, Judge.

AFFIRMED.

*W. H. Russell* and *G. W. Easley* for appellant.

(1)   The relation between Walker, the foreman, and the plaintiff was that of fellow servants. *Daubert v. Pickett*, 4 Mo. App. 590 ; *Hamilton v. Iron Mt. Co.*, 4 Mo. App. 564 ; *Hofnagle v. Ry.*, 55 N. Y. 608 ; *Crispin v. Babbitt*, 81 N. Y. 520 ; *Farwell v. R. R.*, 4 Met. 49 ; *Rains v. R. R.*, 71 Mo. 164 ; *Lee v. Detroit, etc.*, 62 Mo. 416 ; *Cagney v. Ry.*, 69 Mo. 416 ; *McDermott v. Ry.*, 71 Mo. 516 ; Cooley on Torts, 541, 562 ; Wood's Master and Servant, 898, *et seq.* (2)   Where the plaintiff seeks to recover on the ground that the defendant failed to exercise reasonable care in employing or in negligently retaining in its employ an incompetent servant when it knew, or by the exercise of ordinary care might have known, of such incompetency, it must be shown that such incompetency was the direct and immediate cause of the injury. Both the default of the servant and the want of ordinary care of the master in employing or retaining him must concur. *Wright v. R. R.*, 25 N. Y. 562 ; *Culhane v. R. R.*, 60 N. Y. 137 ; *Hayes v. Ry.*, 3 Cush. 270 ; *Laning v. Ry.*, 49 N. Y. 529 ; *Skip v. Ry.*, 24 L. & E. 396 ; s. c. 9 Exch. 223.

Applying the foregoing principles to the case at bar the plaintiff is not entitled to recover. (3) But even if Walker did order a blow which was improper and negligent, still his negligence was not the direct and immediate cause of plaintiff's injury. Reed held the hammer and was striking the wedge and he alone could regulate the force of the blow, and if there was any negligence which was the proximate cause of the injury to plaintiff, it was that of Reed who was plaintiff's fellow servant and competent and skilful. 1 Wharton on Negligence, secs. 134, 147; Cooley on Torts, 79, 80. (4) The plaintiff cannot recover because he knew and had the same means of knowlege that the defendant did of the incompetency of his fellow servant, and with such knowledge continued to work with him. *Davis v. Detroit, etc., Railroad Co.,* 20 Mich. 105; *Indianapolis & Cin. Railroad Co. v. Love,* 10 Ind. 556; *Laning v. N. Y. Cent. Railroad Co.,* 49 N. Y. 521, 534; *Skip v. Eastern Railroad Co.,* 24 L. & E. 396; *Thayer v. St. L., Alton, etc., Railroad Co.,* 22 Ind. 29; Wood on M. & S., 804 and 805, sec. 422; 2 Thompson on Neg. 1008, sec. 15, and 1014–1017, secs. 19, 20 and 22. And see: *Dale v. St. L., etc., Railroad Co.,* 63 Mo. 455; *Devitt v. Pacific Railroad Co.,* 50 Mo. 302.

*C. W. Bell, S. P. Huston* and *H. Lithgow* for respondent.

(1) A servant in entering upon an employment assumes its ordinary risks, but the negligence of the master is not one of the ordinary risks. It is the duty of the latter to exercise ordinary care, to employ and retain none but *competent* and *careful* fellow servants. If he fail to perform such duty, it is the *master's* negligence. The master cannot delegate this duty so as to escape responsibility. His delegate, in that respect, is the master—acts in place of the master, and is aptly

termed a *vice principal*. *Harper v. Indianapolis Rail-road Co.*, 44 Mo. 488; *Harper v. Indianapolis Railroad Co.*, 47 Mo. 567; *Moss v. Pac. Railroad Co.*, 49 Mo. 167; *Marshall v. Schricker*, 63 Mo. 308; *Baulec v. Railroad Co.*, 59 N. Y. 359. (2) The evidence very clearly tended to prove that Walker was an unsafe man for his position and that Richards, defendant's vice-principal had notice of it for weeks before the injury but still retained him in the service. (3) The appellant urges that Reed mistook the degree of force intended by the words of Walker, "give it hell;" that Walker intended it as a very mild admonition, a sort of Ingersoll hell; but that Reed, being orthodox, understood it to mean an old fashioned fire and brimstone affair, and acted accordingly. This argument comes from the intimate knowledge of theology possessed by the learned gentleman representing the appellant, but as addressed to the ordinary affairs of life, it is not very convincing. We understand it to be an expression used to call forth the utmost effort. (4) The instructions given on both sides presented the case to the jury with exceptional fairness to the defendant, in fact more liberally than the decisions of this court warrant. *Porter v. Railroad*, 71 Mo. 73. The tenth instruction asked by defendant was properly refused. This instruction ignores the suddenness of the order, and the circumstances in which plaintiff was placed, the order of his boss, and required him to resolve his line of action in a moment, and act in a single instant of time, and declares as *matter* of *law* that failure was negligence which precluded a recovery. *Brown v. Railroad Co.*, 32 N. Y. 597; *Beiseigel v. Railroad Co.*, 34 N. Y. 622; *Gayner v. Railroad Co.*, 100 Mass. 208; *Railroad Co. v. Stone*, 17 Wall. 663; *Flynn v. Railroad Co.*, 78 Mo. 195. (5) The motion for a new trial was not well taken on the ground of newly discovered evidence. A new trial is never granted where the alleged new facts are to be proven by witnesses who testified at the trial. *Cook v. Railroad*, 56 Mo. 380.

HENRY, C. J.—This is an action for damages for personal injury. The petition alleges that plaintiff was in the employ of defendant, working in a stone quarry, and that one Walker, who was defendant's foreman, directed him to hold an iron wedge which was to be driven into a rock, and, while plaintiff was so holding the wedge, Walker ordered the person driving the wedge to strike it, in an improper, negligent and unskilful manner, with a violent and heavy blow, and that said driver struck it a heavy, violent and unusual blow, which caused the wedge to rebound, striking plaintiff in the face breaking his nose and putting out his left eye. It further alleged that Walker was incompetent, unskilful and unfit to perform the duties of foreman. That he was in the habit of becoming intoxicated, which was known to defendant long before the injuries herein complained of, or might have been known, etc., and that plaintiff did not know of his incompetency, or dissipated habits. The answer was a general denial. On a trial of the cause, the plaintiff obtained a judgment for $3,000, from which this appeal is prosecuted.

The evidence tended to prove the facts as alleged, with reference to the manner in which plaintiff was injured. There was evidence tending to prove that Richards, who had the chief control of that work, and hired and discharged men employed in the quarry, knew some weeks before the plaintiff was injured that Walker was in the habit of getting drunk, and also, that, at the time the injury was sustained by plaintiff, he was drinking. That he kept whiskey in a hollow log or stump near the quarry, and made frequent visits to it. That when sober, he was a skilful quarryman of considerable experience. On the occasion that plaintiff was injured, it is the testimony that Walker first attempted, with a sledge hammer, to drive the wedge, but called to Reed who took the wedge, and, after making a few slight blows upon the wedge, Walker said to him, "give it

hell," and thereupon, he struck·it a violent blow, which caused it to fly out of the crevice, as alleged in the petition.

For plaintiff the court instructed the jury as follows:

"1. If the jury believe from the evidence that plaintiff was in the defendant's employ on the fourteenth day of June, 1881, and was then struck in the face and injured, and his eye put out by the rebound of a wedge used in opening rock, and that such rebound was caused by a heavy, unskilful and reckless blow given by the order and direction of one A. M. Walker, foreman or boss in the quarry; that said Walker was in defendant's employ at the time, and that he was under the influence of liquor at the time, and was thereby rendered an incompetent and unsafe man to have in charge of said work; that his habits for some time previous thereto had been intemperate, and that the defendant had notice or knowledge of such intemperate habits before the injury to plaintiff, then their finding must be for the plaintiff, unless they believe from the evidence that the plaintiff knew of the intemperate or reckless habits of said Walker, and with such knowledge continued in the defendant's employ, or that he at the time he was injured failed to use ordinary care to prevent injury, and was guilty of such negligence at the time as contributed directly to his injury."

"2. The jury are further instructed that if they believe from the evidence that James Richards was defendant's superintendent of masonry and stone work, and had power to employ and discharge Walker and the other persons employed in the quarry, and was the representative of the defendant in so doing, then notice to him or knowledge by him of the intemperate habits of Walker was notice to and knowledge by the defendant."

"3. The jury are instructed that the plaintiff is not chargeable with any negligence in failing to inquire into or investigate the habits of Walker, but was justi-

fied in relying on defendant's duty to neither employ nor retain incompetent, intemperate or reckless bosses or foremen, after notice or knowledge thereof by defendant or its agent in the selection, hiring and discharging of hands ; and although the jury should believe from the evidence that Walker was an habitual drunkard, and that his habits in that respect were generally known in Mooresville, yet that fact alone does not preclude a recovery by plaintiff, but to have that effect the jury must believe from the evidence that the plaintiff knew of such habits of Walker."

"4. If the jury find for plaintiff, they may, in estimating his damages, take into consideration all the facts and circumstances as detailed in evidence ; his loss of time, his bodily and mental suffering, his expenses incurred in and about attempting to cure himself, the extent of his injuries and whether they are permanent in their nature, and allow him therefor such sum as they believe, from the evidence, he has been damaged, as shown in evidence, not exceeding $8,000."

For defendant the following instructions were given:

"1. Unless the plaintiff has shown by a preponderance of the evidence, to the satisfaction of the jury, that A. M. Walker, foreman in the rock quarry, where the plaintiff received his injury, was incompetent to discharge his duties as such foreman, and that the defendant corporation, acting by its proper officer or agent, was negligent in employing said Walker for said position, or that if Walker was a competent foreman when employed on behalf of the defendant, that he afterward became, because of alleged intoxication, unskilful or incompetent, and that defendant knew of such incompetency, or that said Walker had been so incompetent for such a period of time before the accident to the plaintiff, that by ordinary observation and due attention, the defendant's agent, whose duty it was to discharge as well as employ quarrymen and foremen in such work, should have known that Walker had become incompetent, and

that the plaintiff did not know that Walker was so incompetent by reason of intoxication, and that by the exercise of ordinary care and caution plaintiff could not have known of such incompetency, then the jury must make their verdict for the defendant."

"2.    The court further instructs the jury that there is no evidence that the said A. M. Walker, foreman in the quarry, was unskilful or incompetent in any respect to discharge the duties required of him, except when in a state of intoxication."

"3.    If the jury shall believe from the evidence that the accident to the plaintiff was caused by the breaking of the wedge which was being held by the plaintiff ; and the piece of said wedge so broken off rebounding or flying back and striking the plaintiff on his face and thus injuring him, then the plaintiff cannot recover in this action, and the verdict must be for the defendant."

"4.    The court further instructs the jury, that although Walker, the foreman at the quarry, may have been negligent in directing that the wedge which was being held by the plaintiff be struck a heavy or violent blow, yet if it further appear from the evidence that said Walker was, and theretofore had been, a skilful and competent person in the discharge of such duties, then such single act or instance of negligence will not render the defendant liable in this action."

"5.    That the fact that said Walker ordered said Reed to strike said wedge a violent blow, and that by reason of said violent blow being struck said wedge flew out and injured plaintiff, is no reason why plaintiff can or ought to recover, unless the jury are satisfied, by a preponderance of the evidence, that such a rebound of said wedge would be so likely to follow said blow that a reasonably prudent man ought to have known that such might have been the result, and unless they do so find, by a preponderance of the evidence, plaintiff cannot recover ; and in making up their opinions in relation

thereto, the jury will consider the condition of the stone, and all the other facts in evidence at the time the blow was struck."

"6. The court instructs the jury that even though the said Walker may have been a common drunkard or an incompetent foreman, still the jury cannot find for the plaintiff in this case unless they are satisfied by a preponderance of the evidence that plaintiff was injured by reason of such incompetency and not by accident."

"7. The court instructs the jury that if they find from the evidence that the injury was occasioned to the plaintiff in consequence of the intoxication of Walker, the foreman, and that the plaintiff knew of his intoxication at the time of the injury, or that by the use of ordinary observation, he could have known that said foreman was incapacitated from a proper discharge of his duties, then they will find for the defendant, notwithstanding they may find that James Richards, the agent of the company, may have known of his habits of intoxication."

"8. The court instructs the jury, that they should entirely exclude from their consideration all evidence in regard to the alleged intoxication of said Walker after the plaintiff received his injury."

"9. The court instructs the jury, unless they find from the preponderance of evidence that the injury to the plaintiff was the result of negligence upon the part of Walker, foreman in charge of the work, and that said negligence was occasioned by the intoxication of said foreman, and that the defendant's officers knew, or agents had notice that said foreman was so habituated to the use of intoxicating liquors as to render him an unsafe and unfit person to have in charge of such work, and that the plaintiff was ignorant of such habits and incompetency of said foreman, they will find for the defendant."

The following instructions asked by defendant were refused:

"10. The court instructs the jury that, notwith-standing they may find that the said Walker ordered the party to strike the wedge in a violent manner, and that the same was carelessness upon the part of said Walker, yet if they find from the evidence that the plaintiff heard said order, then the jury are instructed that it was negligence on the part of the plaintiff to retain his hold on said wedge until the blow was made; and if they believe from the evidence that he had time from the moment he heard said order until the blow was struck to let go of the wedge, then it was negligence on his part, and the jury must find for the defendant."

"11. The court instructs the jury that if they find from the evidence that Walker was the foreman in charge of the work at the time of the injury, and that he was in the employ of the defendant in connection with the plaintiff, and that James Richards was the general superintendent of the work, and that Walker and plaintiff were under his charge as such, then in that event the said Walker and plaintiff were fellow servants, and the verdict must be for the defendant."

"12. The court instructs the jury that they must be satisfied by a preponderance of the evidence that at the time defendant hired said Walker, they knew that he was an incompetent and unsafe foreman to place in charge of said work, or that since said Walker was so employed by said company, said company had been duly advised that said Walker was, at the time of the hiring, or had since become incompetent, and still retained him, and that if the jury should find that they did so, still the jury are instructed that if the plaintiff had the same means of information as to said Walker's incompetency, and still continued to labor under said Walker, then plaintiff cannot recover in this action, even though he did not know it in fact."

"13. The court instructs the jury that they will exclude from the jury the evidence of Moore as to the

statements of Richards, made before the injury, in regard to the habits of Walker for intemperance."

The allegation in the petition is, that Walker was incompetent and defendant knew it, and plaintiff did not. This issue was fairly submitted to the jury by plaintiff's first instruction, and also in the first, given at defendant's instance. We see no objection to any of the instructions given, either for plaintiff, or defendant, but think that they fairly submitted the issues made to the jury, and shall, therefore, consider the instructions asked by defendant, which the court refused.

The tenth was erroneous, because it assumes that if the order to strike the wedge, given by Walker, was an improper one, plaintiff knew it. The eleventh was erroneous, in declaring that if the jury found that plaintiff and Walker were fellow servants, their verdict should be for defendant, ignoring all the facts which tended to establish a liability on the part of defendant, even conceding that Walker and plaintiff were fellow servants. The twelfth refused was properly refused, because, while it asserts correctly an abstract proposition of law, yet it is inapplicable here. The evidence was direct that Richards was informed of the intemperate habits of Walker, and this was knowledge on the part of the company, and there is no evidence that plaintiff had the same means of information of his habits, that defendant had. Besides, in defendant's ninth instruction given, the jury were told that if Walker's negligence was occasioned by intoxication, and that plaintiff knew of his intoxication, at the time of the injury, or that, by the use of ordinary observation, he could have known that he was incapacitated for a proper discharge of his duties, they should find for defendant, although they should find that Richards, the agent of the company, knew of his habits. There was no error in refusing defendant's thirteenth instruction, asking the court to exclude from the consideration of the jury the testimony with respect to statements of Richards, before the

plaintiff was injured, to the effect that he knew of Walker's intemperate habits. Whether Moore's testimony was admissible or not, if objection had been made to it by defendant, the instruction was properly refused. The testimony was elicited by direct questions and was not, as is sometimes the case, given in such a manner that the defendant had no opportunity to object beforehand. Defendant not only interposed no objection, but cross-examined the witness at length, in relation to the same matter. To allow a party to permit, without objection, the admission of evidence, and for the first time make his objection in instructions would be intolerable practice. If he had an opportunity to interpose an objection, he cannot take the chances that the testimony will be favorable to him and when it turns out otherwise raise his objection, but must be held to have waived it.

Nor is there anything in the affidavits with respect to newly discovered evidence which would warrant us in disturbing the judgment. Two of the affiants were witnesses, and testified at the trial, and all of them were in the service of the company. The newly discovered evidence related to the effect of a violent blow upon the wedge and the intemperate habits of Walker, and to statements made by plaintiff exonerating the company from blame. The drunkenness of Walker, and the effect of a violent blow upon the wedge were directly in issue, and the knowledge of the intemperate habits of Walker, possessed by Richards, was also in issue, and he testified in the cause. If the defendant did not know that these witnesses, experienced quarrymen, knew what the effect of a violent blow upon the wedge would be, it was because it was negligent in the preparation of the case, and all the alleged newly discovered facts were so accessible to the defendant, that negligence must be imputed to it in not discovering them before the trial.

The judgment is affirmed. All concur, except Sherwood, J., who dissents.